# Richmond.

HURST & Co. v. LECKIE.

NOVEMBER 16, 1899.

Absent, Keith, P.

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—*Reservations—Inconsistent Stipulations.*—A deed of assignment for the benefit of creditors which reserves any benefit to the grantor himself, or which introduces limitations and contingencies such as will give him control of the property or its proceeds, so as to enable him, in effect, to defeat the conveyance, or which reserves to the grantor power to revoke it, or which stipulates for the maintenance of the grantor or his family, or for his employment at a fixed salary, is fraudulent. The deed in the case at bar is not obnoxious to any of these objections.

2. ASSIGNMENT FOR THE BENEFIT OF CREDITORS—*Fraud per se—Discretion to Trustee to Sell in Course of Trade—Replenishing Stock.*—A discretionary power vested in a trustee to run and operate the business for a year, if he deem it wise to do so, having in view the interest of the creditors secured, does not render void *per se* a deed of conveyance of a stock of goods. Nor is such deed rendered void by the further provision empowering the trustee to replenish the stock by cash purchases of such articles as will aid in keeping up the business, and disposing of the other stock to better advantage.

3. ASSIGNMENT FOR BENEFIT OF CREDITORS—*Employment of Debtor as Salesman.*—A conveyance to a trustee of a stock of goods to secure creditors which authorizes the trustee to sell in the usual course of trade for a limited period, and to that end to employ clerks and salesmen, is not invalidated by the fact that the trustee employs the grantor as his chief salesman to dispose of the stock of goods.

4. ASSIGNMENT FOR BENEFIT OF CREDITORS—*Release Clause—What Must be Conveyed.*—If a debtor stipulates in his deed of assignment for a release from his debts by the creditors secured he must convey

Statement.

all, or substantially all, of his estate, or all of substantial value. He cannot convey a part only to pay his creditors, and keep back a part for himself.

5. ASSIGNMENT FOR BENEFIT OF CREDITORS—*Release Clause—Failure of Debtor to Deliver all Property Conveyed.*—A deed of assignment for the benefit of creditors whereby the debtor conveys his entire estate, except such articles as are exempt by the poor debtor's law, and which contains a release clause, is not invalidated by the failure of the debtor to turn over and deliver to the trustee, in pursuance of the terms of the deed, any property of any kind, except that exempt as aforesaid. The title to the property being vested in the trustee, with the right to immediate possession, he can recover it from the debtor or other person who withholds it.

6. ACKNOWLEDGMENTS — *Certificate—Parol Evidence.*—The acknowledgment of a deed, to entitle it to recordation, must be before the officers and according to the form prescribed by law; and the certificate thereof, in that form, or to that effect, must be written upon or annexed to the deed. The certificate must contain all the requisites of such form, and no omission can be supplied by parol evidence. But a substantial compliance is all that is necessary.

7. ACKNOWLEDGMENTS—*Case in Judgment—Certificate—Commissioner in Chancery.*—In the case in judgment the certificate of acknowledgment of a deed was as follows: "State of Virginia, City of Buena Vista, to-wit: I, T. F. Amole, a Commissioner in Chancery for the city aforesaid, in the State of Virginia, do certify that G. W. Leckie and E. M. Leckie, whose names are signed to the writing hereto annexed, bearing date on the 30th day of August, 1897, have acknowledged the same before me in my city aforesaid. * * * * Given under my hand this 30th day of August, 1897. T. F. Amole, Commissioner in Chancery."

*Held:* The certificate is sufficient. As the city of Buena Vista had no Circuit Court at that time, the certificate could only mean that T. F. Amole was a "commissioner in chancery for the Corporation Court of the city of Buena Vista"—an officer duly authorized to take such acknowledgment.

Appeal from a decree of the Corporation Court of the city of Buena Vista, pronounced December 12, 1898, in a suit in chancery, wherein appellants and other were the complainants; and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

*Winborne & Batchelor, Barton & Boyd, C. B. Guyer,* and *G. D. Letcher,* for the appellants.

*F. T. Glasgow, Wm. A. Anderson,* and *H. A. White,* for the appellees.

RIELY, J., delivered the opinion of the court.

The deed of trust from G. W. Leckie to Hugh A. White, trustee, which is the subject of this controversy, is assailed as fraudulent *per se,* upon the ground that certain of its provisions are incompatible with the avowed purposes of the deed, and are adequate to defeat it as a security for the payment of the debts of the grantor. The clauses of the deed, which are alleged to contain the illegal provisions, are the following:

" The said Hugh A. White, trustee, shall immediately take possession and control of all the property, real and personal and mixed, hereinbefore described, and proceed to make sale of the same, either privately or by public auction, and as a whole or in parcels or parts, as he may deem best for the creditors, and in order that the best interest of the creditors may be preserved. The trustee may, if it seems to him wise, run and operate the merchandise business of the said G. W. Leckie for the period of one year from the date of this deed, and, if at the end of that time the indebtedness is not all paid, and it is demonstrated that a continuance of the operation of the business will be to the advantage of those creditors not yet paid, then the said trustee shall continue to operate the business for another year, unless a majority in the amount of the creditors then unpaid object, in writing, to the further operation, and upon such objection by a majority in amount of the creditors, or if it is not demonstrated that it would be to the best interest of the remain-

ing creditors at the end of the first year's operation to continue to operate the business, then the trustee shall proceed to sell such stock of general merchandise at public auction to the highest bidder, after giving reasonable notice of the time and place.

" The said trustee is authorized and empowered to make such purchases of additional stock for cash from the proceeds of his operation of the business as will aid in keeping up the business and disposing of the other stock to a better and more profitable advantage."

It is asserted that the foregoing clauses contain a reservation for the benefit of the grantor in providing for the continuance of the business by the trustee, and that there can be no reservation to the grantor, or to the trustee, of any right, power, or control over the subject of the deed of assignment, which is inconsistent with an absolute application of its proceeds to the payment of the debts secured. It is beyond question that to reserve any benefit to the grantor himself, or to introduce limitations and contingencies such as will give him control over the property or its proceeds, so as to enable him, in effect, to defeat the conveyance; or to reserve the power to revoke it; or to stipulate for the maintenance of the grantor or his family, or for his employment at a fixed salary, will render the deed fraudulent. 2 Minor's Inst. (4th Ed.), 680, and the cases there cited.

The deed in question is an absolute conveyance by the grantor of all his property to the trustee; is a complete, immediate, and unreserved dedication thereof to the payment of the creditors secured; and provides for the immediate possession and control by the trustee. It leaves no interest whatever in the property in the grantor, nor reserves to him any use, possession, or control over it, but, by its express terms, all right and title to, and possession and control of, the property are absolutely and immediately vested in the trustee. It provides not only for the immediate possession and control of all the property by the

trustee, but for the immediate sale thereof by him for the purpose of paying the creditors in the order that they are secured. It is only in the event that it seems to the trustee wise and advantageous to the interests of the creditors that he is authorized to continue the business. Nor is he empowered to do so for an indefinite time, but he is expressly restricted to the period of one year, unless the operation of the business for that length of time demonstrates that a continuance of the business for another year will be to the advantage of the creditors who have not then been paid. But even if that be demonstrated by the result of the operation of the business for a year, yet, upon the objection of a majority in amount of the unpaid creditors to a further continuance of the business, the trustee is required to sell the stock of merchandise by public auction to the highest bidder, after giving reasonable notice of the time and place of sale. And if the trustee should deem it wise to run and operate the business for a year, instead of making an immediate sale of the stock of merchandise, the deed contains no provision that the trustee shall employ the grantor as agent or clerk to assist him at a fixed salary, or that he should employ him at all. It is not perceived that the deed contains any reservation whatever for the benefit of the grantor. No interest or right in or to the property, or possession of or control over it or its proceeds, is reserved to him.

Nor does the law condemn as vicious and illegal the provision of the deed giving to the trustee the discretionary power to run and operate the business for a year, if he deem it wise to do so, having in view the interests of the creditors. It is not mandatory, and does not oblige him to carry it on for a single day. He may immediately sell, and convert the property into money, and apply the same to the payment of the debts in the order that they are secured. It is only, if in his judgment best for the creditors, that he may, in his discretion, carry on the business for a year, taking that limited and definite period to dispose of the stock to the best advantage by retailing the goods for cash in the usual course of

mercantile trade and business, and not sacrifice them by a forced sale by public auction. The provision would seem to be a salutary one instead of fraudulent and illegal.

It is also proper in this connection to observe that the deed requires the trustee to proceed at once to collect all debts, and from such collections, and the proceeds of the sale of the property, and out of the operations of the business, if it is operated, after paying certain charges and expenses, to pay the debts in the order of their priority.

Nor is the deed rendered fraudulent by the further provision empowering the trustee to make such purchases of additional stock for cash from the proceeds of his operation of the business as will aid in keeping up the business and disposing of the other stock to a better and more profitable advantage. It confers upon the trustee the authority to make only *such* purchases as will aid in keeping up the business, and disposing of the other stock more advantageously. The language of the provision shows clearly that the purchases of additional stock were to be only ancillary to the winding up of the business. The power to replenish the stock for this purpose is not illegal. *Marks* v. *Hill,* 15 Gratt. 400; and *Williams* v. *Lord & Robinson,* 75 Va. 390.

The trustee is not empowered to incur any debt in making such purchases. The deed does not authorize him to borrow money with which to make the purchases, nor to buy on credit. He is restricted to purchases for cash received from the operation of the business. Buying for cash and selling for cash, which he was required to do by the express terms of the deed, he was not given a power to defeat the security for creditors provided by the assignment by risking the casualties of trade. It is not perceived how the honest and prudent exercise of the power could so result. The deed in question differs very materially from those pronounced to be fraudulent and void in *Lang* v. *Lee,* 3 Rand. 410; *Sheppards* v. *Turpin,* 3 Gratt. 373; and *Catt, Trustee,* v. *Knabe Man. Co.,* 93 Va. 736, which were the authorities mainly relied

upon by the learned counsel for the appellants to show its invalidity. It is free from their provisions, which were incompatible with the avowed object of the respective grantors to furnish an indemnity to their creditors, and destructive of the security provided.

In *Lang* v. *Lee,* the deed provided that the stock of goods should remain in the possession of the grantor; reserved to him the power to make sales of them, but to account to the trustee, *if called upon;* and authorized him to pay off the debts secured by instalments, allowing him nearly a year to do so. The grantor, while affecting by the deed to devote the goods to the payment of debts, retained for ten months the possession, the use, and the power of selling every article thereof, to whom, in what manner, and on what terms he pleased, but to account, if called upon. These powers were incompatible with the avowed purpose of the deed. The only effect of the assignment was to mask the property. As was said by Judge Carr in that case, we cannot " imagine a power more completely adequate to the destruction of the avowed purpose of the deed than that retained by the grantor."

In *Sheppards* v. *Turpin,* the deed conveyed the whole estate of the debtor avowedly for the purpose of securing all his creditors, yet reserved to him the right to retain possession of all the property for three years; also, the right to carry on his business as a brick-maker to any extent that he and his trustees might think proper; empowered him to borrow money from the trustees, and they to advance to him any sums they in their judgment should deem sufficient for the prosecution of the business; authorized the trustees to become his sureties upon all contracts for the hire of laborers he might make; and if at any time after such loans or advancements were made, the trustees should deem his conduct injudicious or unthrifty, they were given the power to sell the trust property, if necessary to pay such loans and advancements, and to discharge the contracts for laborers upon

which they might have become sureties. In the right reserved
to the grantor to carry on the business for three years was implied
the power to sell the stock in trade on hand and conveyed, with-
out any provision in the deed securing the application of the
profits of the business during the three years or such time as he
retained the possession and carried on the business under the
provisions of the deed, or of the profits or proceeds arising from
such transactions as might be based upon the contemplated
advancements by the trustees, to the payment of the debts
secured. Judge Daniel truly said: " Under the power to make
the loans provided for in the deed, the property might, at the ex-
piration of the three years, have stood charged with sums suf-
ficient to consume it, to the entire exclusion of all the creditors
assenting to the deed."

In *Catt, Trustee,* v. *Knabe Man. Co.*, the deed of trust was
declared to be illegal, because it *required* the trustee to conduct
the school known as the Wesleyan Female Institute for a period
of eighteen months, and to that end authorized him to employ
tutors and such other agents as he might deem necessary, and
pay them a reasonable compensation for their services out of the
trust funds, and made their salaries and the " running expenses "
of conducting the school a primary charge upon the *corpus* of
the trust funds and superior to the rights of the creditors. It
was, therefore, pronounced fraudulent *per se* and void because it
subjected the *corpus* of the trust to the hazard of the unsuccess-
ful operation of the school, and made the operating expenses and
liabilities prior in right to the creditors in the distribution of the
proceeds of the trust subject.

Very different are those cases from that at bar. The incom-
patible and destructive provisions which rendered the deeds in
those cases invalid are absent from the deed of assignment in this
case. Here the possession and control of the property conveyed
is not retained by the debtor, nor the right reserved by him to
continue the business and sell and dispose of the stock of goods

as he might think proper, with only the personal liability to account to the trustee, if called upon, as in *Lang* v. *Lee;* nor is there the retention of possession by the debtor for three years, and a reservation in him of the right to carry on the business, to sell the stock in trade on hand, or to borrow money to operate the business, and the liabilities so incurred in the operation of the business, made a preferred charge upon the trust subject, thereby subjecting it to the casualties of trade, as in *Sheppards* v. *Turpin;* nor an express and positive requirement that the trustee shall continue the business for a definite period, whether or not he deemed it judicious to do so in the interest of the creditors secured, or it proved to be advantageous to their interests, and the creditors subordinated in the distribution of the proceeds of the trust fund to the liabilities incurred in the conduct of the business by the trustee, as in *Catt, Trustee,* v. *Knabe Man. Co.;* but an absolute conveyance, and unreserved dedication of all the estate of the debtor to the payment of his debts, and the investment of the trustee with the immediate possession and entire control of the property, and the power to sell the same at once privately or publicly, as a whole or otherwise, with the superadded discretionary power, if he should deem it wise, having solely in view the interests of the creditors secured, to carry on the business for one year, and to replenish the stock with *such* purchases as would enable him the more readily to dispose of the stock of merchandise conveyed, as ancillary to its advantageous conversion into cash, and the winding up of the trust. The business was not to be conducted for the profit and benefit of the debtor, but wholly with the view to the largest realization of the trust subject, and the greatest advantage of the creditors.

In *Marks* v. *Hill,* 15 Gratt. 400, it was held that a power in a deed of trust to secure creditors to the trustee to continue the business and replenish the stock, if merely intended as a means of realizing the trust fund, and with a view to the winding up of the business, as is plainly apparent was the object of these

provisions in the case at bar, did not render it fraudulent *per se,* and avoid the deed. It is not possible to read the deed in this case, and not see that all its provisions were solely intended to realize the greatest amount from the trust subject for the payment of the creditors, and were not designed to benefit the debtor. The same principle was affirmed in *Williams* v. *Lord & Robinson,* 75 Va. 401. See, also, *Catt, Trustee,* v. *Knabe Man. Co.,* 93 Va. 740.

The fact that the trustee elected to carry on the business for the limited period prescribed by the deed did not invalidate it. The right to do so, if in his judgment wise, was clearly conferred upon him, and, as seen above, such a provision is not illegal.

Nor does the further fact that the trustee employed the debtor as his chief salesman to dispose of the stock of merchandise do so. The deed of trust imposed on the trustee no obligation to employ the debtor, in the event that he should deem it wise to " run and operate the merchandise business," but simply authorized him to employ agents to aid him in disposing of the stock. The deed of trust in *Janes* v. *Whitbread,* 9 Eng. L. & Eq. 431, and also in *Coate* v. *Williams,* 9 Eng. L. & Eq. 481, expressly authorized the trustee to employ the grantor in winding up the trust, and in carrying on the business, if thought expedient by the trustee, and to allow him such sum for his services as the trustee might think proper, but did not specify the salary or compensation to be paid. The deeds were sustained in both cases. These cases were cited with approval by this court in *Marks* v. *Hill, supra,* where a provision in a deed of trust that the trustee, with the consent in writing of certain of the creditors secured, should permit a particular one of the grantors to carry on the mercantile business, the stock whereof was assigned by the deed, and to replenish the same, was held not to avoid the deed. Our conclusion is that the deed, the validity of which is the subject of this controversy, is not fraudulent *per se,* and should not for that reason be declared void.

A further objection was made to the deed that, while it stipulated for a release of the debtor from his debts, he did not deliver up all his estate to the trustee, it being charged that he withheld certain accounts on his books which, he asserted, he had transferred to his mother to pay a debt he owed her, but had not done so.

It is settled law that where a debtor stipulates in his deed of assignment for a release from his debts by his creditors, he must convey his whole estate. He cannot convey a part only to pay his creditors, and keep back a part for himself. He is imperatively required, where he stipulates for his release, to convey all, or substantially all, of his estate, or all of substantial value. *Long, Trustee,* v. *Meriden Britannia Co.,* 94 Va. 594, and the numerous authorities there referred to and discussed.

In the case under consideration, the debtor granted and conveyed to the trustee for the payment of his debts his entire estate. By the express terms of his deed, he conveyed everything and omitted nothing, except what is allowed to poor debtors, and exempted by law from subjection to the payment of debts. Code, secs. 3650, 3655. He granted and conveyed all his estate—his land, personal property, choses in action, and all other estate of every kind, species and description. A deed of this character, although it stipulates for a release of the debtor by his creditors, under numerous decisions of this court, is entirely valid. *Long, Trustee,* v. *Meriden Britannia Co., supra; Skipwith* v. *Cunningham,* 8 Leigh 271; *Kevan* v. *Branch,* 1 Gratt. 274; *Phippen* v. *Durham,* 8 Gratt. 457; *Wickham & Goshorn* v. *Lewis Martin & Co.,* 13 Gratt. 427; *Gordon* v. *Cannon,* 18 Gratt. 387; *Robinson* v. *May,* 76 Va. 708; and *Paul* v. *Baugh,* 85 Va. 955.

If the debtor failed to turn over or to deliver up to the trustee, in pursuance of the terms of the deed, any property of any kind, except that embraced in the exemption in favor of poor debtors, that fact would not invalidate the deed of assignment. The title to all the property was absolutely vested in the trustee by the

conveyance, with the right to take immediate possession thereof for the purposes of the deed, and he could recover from the debtor or other person any that might be withheld from him.

A still further objection was made to the deed, as an impediment to the subjection by the appellants to the payment of their debts of the property conveyed by it, that the certificate of acknowledgment does not show that the deed was duly acknowledged for admission to record, and, consequently, that its recordation was invalid to affect creditors with notice thereof. The specific objection made to the acknowledgment is that it purports to have been made before a commissioner in chancery, and that the certificate of acknowledgment does not show that it was made before a commissioner in chancery of a court of record, nor that he was a commissioner in chancery of any court. The caption of the certificate is: " State of Virginia, City of Buena Vista, to wit." It is then certified: " I, T. F. Amole, a commissioner in chancery for the city aforesaid, in the State of Virginia, do certify that G. W. Leckie and E. M. Leckie, whose names are signed to the writing hereto annexed, bearing date on the 30th day of August, 1897, have acknowledged the same before me in my city aforesaid    *    *    *    ." The certificate then concludes, and is subscribed as follows: " Given under by hand this 30th day of August, 1897.    T. F. Amole, Commissioner in Chancery."

The statute (Code, sec. 2501) requires that a deed shall be admitted to record upon a certificate of acknowledgment thereof before certain officers, among whom is specified a commissioner in chancery of a court of record, and prescribes the form of the certificate. The acknowledgment must be according to the prescribed form, and the certificate thereof, in that form or to that effect, be written upon or annexed to the deed to authorize its admission to record. It must contain all the requisites of such form, and no omission can be supplied by parol evidence. *First National Bank of Harrisonburg* v. *Paul*, 75 Va. 594; *Va. Coal & Iron Co.* v. *Roberson and Wife*, 88 Va. 116; *Hockman* v.

*McClanahan,* 87 Va. 33; *Harkins* v. *Forsyth,* 11 Leigh 301; and *Hairston* v. *Randolphs,* 12 Leigh 445.

It has been held by high authority that if the certificate of acknowledgment does not show the official character of the person who took the acknowledgment, it may be proved by parol evidence, but it appears that this was where the form of the certificate had not been prescribed. 1 Devlin on Deeds, sec. 502; *Van Ness* v. *Bank of U. S.,* 13 Peters 17; *Rhodes* v. *Selin,* 4 Wash. C. C. 718; *Byer* v. *Etnyre,* 2 Gill. 150; s. c., 41 Am. Dec. 410; *Shultz* v. *Moore,* 1 McLean 520; and *Russ* v. *Wingate,* 30 Miss. 440.

It was also held by this court in *Harvey* v. *Borden,* 2 Wash. 156; *Ware* v. *Cary,* 2 Call 263; and *Langhorne* v. *Hobson,* 4 Leigh 224, that it was not essential that the official character of the persons taking the acknowledgment should appear in the certificate, but that it would be presumed that the acknowledgment was made before officers authorized to take it. These cases, however, arose before the enactment of the statute prescribing the form of the certificate of acknowledgment, which had the effect to change the law in this respect. Acts 1813, ch. 10, sec. 2, p. 35; 1 Rev. Code 1819, p. 363.

The certificate of acknowledgment to the deed in question certifies in the body thereof that the acknowledgment was made before T. F. Amole, a commissioner in chancery, and it is also subscribed by him as such officer. This description of his official character implies *ex vi termini* that he was a commissioner in chancery of a court of record, for, under the laws of this State, there are no such officers except commissioners in chancery of the circuit and corporation courts, which are courts of record.

The said certificate also defines the territorial jurisdiction of the officer to be " the city of Buena Vista," and shows necessarily that he was a commissioner in chancery of the Corporation Court of the city of Buena Vista, for there was not up to that time a circuit court for that city. Acts 1897-98, p. 895. A commis-

sioner in chancery, whose territorial jurisdiction was limited to
that city, was plainly a commissioner in chancery of the Cor-
poration Court of that city, for the territorial jurisdiction of a
commissioner in chancery of the Circuit Court of Rockbridge
county would be the said county, and not the corporate limits of
a city within it.

The certificate of acknowledgment, therefore, certifies in sub-
stance that T. F. Amole was a commissioner in chancery of the
Corporation Court for the city of Buena Vista. It describes his
official character, and shows on its face that he was a person
authorized by law to take acknowledgments to deeds. It complies
substantially with the requirements of the statute, which is all
that is necessary. A strict or literal compliance is not required.
Acknowledgments of deeds, either from convenience or necessity,
are frequently made before and certified by inexperienced or
illiterate persons, and to require that certificates of acknowl-
edgments shall conform literally to the prescribed form would
jeopardize titles to lands, and might sacrifice valuable rights
depending upon them. A substantial compliance with all the
material requirements of the statute as to the acknowledgment
of the deed and the form of the certificate is all that is necessary.
If words equivalent to those in the statute are used, it is sufficient.
This is the result of our own decisions, and also the general cur-
rent of the authorities. *Hockman* v. *McClanahan*, 87 Va. 33;
*Va. Coal & Iron Co.* v. *Roberson and Wife*, 88 Va. 116; *Hair-
ston* v. *Randolphs*, 12 Leigh, 445; *Langhorne* v. *Hobson*, 4 Leigh,
224; *Tod* v. *Baylor*, 4 Leigh, 498; and *McClanahan* v. *Siter*,
*Price & Co.*, 2 Gratt. 293. See, also, 1 Devlin on Deeds, secs.
508, 510; *Livingston* v. *Kettelle*, 41 Am. Dec. 166, and note
thereto; *Touchard* v. *Crow*, 81 Am. Dec. 113; *Russ* v. *Wingate*,
30 Miss. 440; *Kelly* v. *Calhoun*, 95 U. S. 710; *Carpenter* v.
*Dexter*, 8 Wall. 513; and *Summer* v. *Mitchell*, 29 Fla. 179.

All the important objections to the validity of the deed have
been now considered, except that it was also attacked as fraudu-

lent in fact.   It is not deemed necessary, nor would it be profitable, to burden or prolong the opinion with a discussion of the evidence upon this point.   It must suffice to say that it does not sustain the charge.

The decree of the Corporation Court must be affirmed.

*Affirmed.*