# Richmond.

## WORLEY v. ADAMS AND OTHERS.

### January 12, 1911.

Absent, Cardwell, J.

1. WILLS—*Construction—Defeasible Fee—Case in Judgment.*—A testator devised and bequeathed real and personal estate to his children, and directed that his estate should be kept together as much as possible for five years, or until his debts were paid, and that his whole estate should be then divided as directed in his will. The will further provides: "If any of my children should at any time die, leaving no lawful child, it is my desire that the portion of my estate herein willed to such child or children, should be equally divided among my surviving children; and if any of my children should be dead leaving children, it is my desire the child or children of the deceased parent should inherit the portion that would have been due the parent if living." The question at issue was what estate did the children of the testator take in the lands devised to them.

   *Held:* The children took an estate in fee in the lands· devised, feasible upon the death at any time of the child leaving no lawful child surviving, and that the defeasance is to be determined at the time of the death of any one of the testator's children leaving no children surviving, and is not affected by the provision of the will that his estate was to be divided at the expiration of five years after the testator's death, or when all of his debts were satisfied, whichever might first happen.

2. DEEDS—*Acknowledgments—Sufficiency of Certificate—Construction of Letters, N. P.*—A certificate of acknowledgment of a deed taken by a notary public which is full, accurate and complete in every respect except that the official character of the officer taking it is not specifically stated in the body of the acknowledgment, but which is signed by him with the letters N. P. after his name, is a sufficient certificate. The letters N. P. read in connection with what is certified stand for and are the equivalent of notary public.

3. Appeal and Error—*Case Heard by Court Without a Jury—Reversal*—Upon reversing a judgment entered by the trial court without the intervention of a jury, this court will enter such judgment as the trial court should have rendered.

Error to a judgment of the Circuit Court of Pittsylvania county in an action of ejectment. Judgment for the plaintiffs. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Peatross & Harris*, for the plaintiff in error.

*Geo. T. Rison* and *James L. Treadway*, for the defendants in error.

Keith, P., delivered the opinion of the court.

This is an action in ejectment, brought in the Circuit Court of Pittsylvania county by H. W. Adams, T. T. Adams, J. B. Adams, N. F. Adams, Nannie W. Floyd, R. H. Walden, R. T. Walden, Lucy E. Fitzpatrick and R. T. Fitzpatrick, her husband, Mattie V. Herndon and E. A. Herndon, her husband, and Callie M. Saunders and J. V. Saunders, her husband, against J. B. Worley, to recover a tract of sixty-eight acres of land which is described in the declaration. The case was submitted to the judge of the court for decision, without a jury, and he rendered a judgment in favor of the plaintiffs, to which the defendant obtained a writ of error.

The case shown by the record is as follows: Thomas T. Adams, a resident of Pittsylvania county, died there in 1855, leaving a will and a considerable estate, real and personal. He gave to his widow a designated portion of his home tract of land and one-third of his perishable property, for life, and at her death the personalty given to her for life was to

be equally divided among all his children, and the real estate was to be given to his daughters, Elizabeth and Virginia. The residue of his personal estate he gave to all of his children, to be equally divided among them. He gave to his two daughters, Elizabeth and Virginia, the residue of his home tract, and directed that each of his sons, Henry, Thomas and William, should pay to each of his daughters the sum of $33.33⅓ *per annum* until they should get possession of the land given to the widow during her life. He appointed his son, Henry, his executor, and directed that his estate should be kept together as much as possible for five years, or until his debts were paid, and that his whole estate should be then divided as directed in his will.

The seventh clause of the will is as follows: "If any of my children should at any time die, leaving no lawful child, it is my desire that the portion of my estate herein willed to such child, or children, should be equally divided among my surviving children; and if any of my children should be dead leaving children, it is my desire that the child, or children, of the deceased parent should inherit the portion that would have been due the parent if living."

In 1857, before the expiration of five years and before the testator's debts were paid, his two daughters, Virginia L. Adams and Elizabeth and her husband, James R. Jennings, whom in the meantime she had married, filed a bill in the county court of Pittsylvania county, in which they made the widow and all the other devisees of their father defendants. The prayer of the bill was that the portion of the home tract devised to the widow, Matilda C. Adams, be assigned to her, and that the residue be divided between Elizabeth and Virginia equally, as directed in the will. The defendants answered the bill and acquiesced in its prayer, and the court appointed commissioners to make a division, which was done and duly reported. By this division 812 acres of the home tract was allotted to Virginia L. Adams, 996 acres to Eliza-

beth T. Jennings, and 656 acres to the widow, and they took possession of their respective allotments. In 1865, Thomas T. Adams, one of the sons, died, never having married, and leaving no lawful child. As the result of the war, the fortunes of the executor, Henry W. Adams, had been much impaired, and the estate of Thomas T. Adams, the testator, was in confusion. The executor had settled no accounts, and was in no condition to do so. The widow and children of the testator, except his son Thomas, were all living, and on the 10th of March, 1877, they agreed upon a full and final settlement between themselves and with the executor of all the matters concerning the estate, and entered into and made a deed by which it was mutually agreed that they would pay to the widow, Matilda C. Adams, $100 *per annum* as long as she should live, in consideration of which she transferred to Henry W. Adams, William V. Adams and R. H. Walden and Elizabeth, his wife, all her interest in the land allotted to her for dower. Virginia L. Adams had in the meantime married Samuel E. Saunders and she and her husband transferred to H. W. Adams, W. V. Adams, R. H. Walden and Elizabeth, his wife, all their interest in the dower land, and withdrew or forebore to bring a suit then pending or contemplated against the executor, H. W. Adams, for a settlement of his father's estate, released Henry W. Adams and W. V. Adams from any further payment of the annuity of $33.33⅓, which they had been required to pay by the will of their father, and transferred and assigned to Henry W. Adams, William V. Adams and Richard H. Walden and Elizabeth, his wife, all right, title, interest and claim which the said Saunders and wife then had or might thereafter have in and to the lands then held by them or either of them, or which they or either of them might thereafter acquire on account of any provision in the will of Thomas T. Adams. The same provision, or provisions to the same effect, and transfers were made by, to and between the other children and devisees of Thomas T. Adams,

deceased, each releasing to the other all claim, right, title and interest that they then had, or that might thereafter come to them by any provision in the will of Thomas T. Adams.

The certificates of acknowledgment by the parties to this deed, except that of the widow, were made by J. R. Whitehead, who was a notary public in and for the State of Virginia and county of Pittsylvania, but the name and official character of the notary are not stated in the body of the certificates. In all other respects, however, they are in the statutory form and are signed by J. R. Whitehead, with the letters "N. P." appended to his name, and the deed was recorded by the clerk upon said certificates.

After making this deed, on the 10th of June, 1902, Samuel E. Saunders, the husband of Virginia, having died before that time, she and R. T. Walden, one of the children of Elizabeth Walden, in consideration of the sum of $204 to them in hand paid, sold and conveyed the land which is now in dispute to J. B. Worley. After the execution of this deed and before the institution of the ejectment suit, the children of the testator who were surviving when what we shall designate as the partition deed was made, and united in it, died in the following order: Henry W. Adams in 1896; Virginia L. Adams in March, 1906; Elizabeth Walden in June, 1906; and W. V. Adams in December, 1906. Henry W. Adams left surviving him at the time of his death several children, who are among the plaintiffs in this suit. Elizabeth Walden left surviving her children who are also named as parties to this suit. Virginia Saunders and W. V. Adams left no children surviving them; and R. H. Walden, one of the children of Elizabeth, died after the suit was brought. R. T. Walden, who was also named as a plaintiff, united with Virginia Saunders in the deed to J. B. Worley. All the children of the original testator, Thomas T. Adams, were dead at the time this suit was brought, and a part of the plaintiffs are the children of H. W. Adams, and others children of Elizabeth Adams.

The judgment of the court was that the plaintiffs should recover nine undivided tenths of the sixty-eight acres of land for which suit was brought, but excluded from the recovery R. T. Walden, whose rights had passed under the deed to Worley. Concerning the will of Thomas T. Adams, the circuit court was of opinion that his children took a fee simple in the real estate devised to them, defeasible in the case of each child by his or her death at any time leaving no lawful child surviving; and that at the death of any child of testator leaving no lawful child surviving the share devised to such child should go to the children then surviving and to the children of such of the children then dead as had died leaving lawful children surviving.

The court was of opinion that the deed between the parties interested, made on the 10th of March, 1877, for the final settlement and adjustment between them of all of the matters of the estate was invalid and void as to the married women, because of the informality and insufficiency of the notarial certificate of acknowledgment.

As to all these contentions and rulings of the court upon them, J. B. Worley's petition alleges that there was error, and that the court erred in its judgment that the plaintiffs were entitled to recover.

We are of opinion that the court correctly held that, under the will of Thomas T. Adams, the realty given by him to his children was an estate in fee, defeasible upon the death at any time of the child leaving no lawful child surviving, and that the defeasance is to be determined at the time of the death of any one of testator's children leaving no children surviving, and is not affected by the provisions of the will that his estate was to be divided at the expiration of five years after the testator's death, or when all of his debts were satisfied, whichever might first happen.

We are of opinion that the court erred with respect to the certificate of acknowledgment to the deed of the 10th of

March, 1877, which is in the words and figures following, towit:

"State of Virginia,

"County of Pittsylvania, to-wit:

"I hereby certify that Annie P. Adams, the wife of H. W. Adams; V. L. Saunders, the wife of Samuel E. Saunders, and E. T. Walden, the wife of R. H. Walden, whose genuine signatures appear to the writing hereto annexed, bearing date on the 10th day of March, 1877, personally appeared before me in my county aforesaid, and being examined by me privily and apart from their said husbands, after having the aforesaid writing fully explained to them, they, the said Annie P. Adams, V. L. Saunders and E. T. Walden, each for herself acknowledged the same to be her act and deed and declared that she had made it willingly and does not wish to retract it.

"Given under my hand this the 10th day of March, 1877."

The only difficulty about this acknowledgment, which is in all other respects full, complete and accurate to a somewhat unusual degree, is that in the body of the instrument the official character of J. R. Whitehead, the notary, is not specifically stated; but no one can read that certificate without being informed that Whitehead was a notary public for the State of Virginia and for the county of Pittsylvania, that he was acting in his official capacity, and gave official authentication to his act by subscribing himself "J. R. Whitehead, N. P."

In *Summer* v. *Mitchell*, 29 Fla. 179, 10 South, 562, 30 Am. St. Rep. 106, 14 L. R. A. 815, the Supreme Court of Florida held, that "a certificate of acknowledgment, of itself, or aided by the instrument acknowledged, must show the title and character of the officer taking the acknowledgment, but this may be shown by the initials of the office as well as if his title were fully written out." And this ruling

is in accordance with common sense and common experience. When we see "J. P." or "N. P." affixed to a certificate, we at once know that it stands for and is the equivalent of "justice of the peace," or "notary public;" and when we read in a paper so signed, in its caption, that it was in the State of Virginia and county of Pittsylvania, and in the body of the writing an authentication of the various acts done, which contains a full and complete record of all that the law requires in an acknowledgment to a deed, all of which is attested under the hand of "J. R. Whitehead, N. P." or notary public, no reasonable doubt can exist as to the sufficiency of the acknowledgment.

The case of *Sullivan* v. *Gum*, 106 Va. 245, 55 S. E. 535, while the certificate was by no means identical with that in this case, is instructive as to the spirit in which the courts interpret such certificates.

It will be presumed that the acknowledgment was taken in the officer's county, although it is not so stated, for it would be an illegal act for the officer to perform beyond the limits of his county. *Bensimer* v. *Fell*, 35 W. Va. 15, 12 S. E. 1078, 29 Am. St. Rep. 774. Although a certificate to an instrument states the title of an officer not authorized to take an acknowledgment, if the signature thereto, together with its suffix, alone shows an officer having such authority, the signature and its suffix will control. *Summer* v. *Mitchell, supra; Rowley* v. *Berriam*, 12 Ill. 198.

In *Russ* v. *Wingate*, 30 Miss. 440, the certificate of acknowledgment to a mortgage of the separate estate of a wife was in the following terms: "The State of Mississippi, Hancock county. At Pearlington, in said county, on the 14th day of March, A. D., 1854, then personally appeared the above named Edwin F. Russ, and Cornelia Russ, his wife, and severally acknowledged the foregoing instrument to be their act and deed; that they signed, sealed, and delivered the same to David R. Wingate, the day and year therein mentioned. And

the said Cornelia, wife of the said Edwin F., as aforesaid, who, on a private examination by me made, separate and apart from her husband, acknowledged that she did so voluntarily, without any fear, threat or compulsion of her said husband; before me. Given under my hand and seal, this, the day and year above mentioned. Lewis Y. Folsom, J. P., H. C. (Seal.)'' The opinion of the court is, in part, as follows: "The statute merely requires that the acknowledgment must be made before any one of the officers mentioned in it, and that 'a certificate thereof must be written on or under the deed or conveyance, and signed by the officer before whom it was made.' It is not provided that the certificate shall contain a description of the office of the person taking the acknowledgment, nor is any mode of showing his official character prescribed. It may, therefore, be shown either in the body of the certificate, or by additions and descriptions attached to his signature. If it appear by the latter mode, it is sufficient if it be done in such manner as to render the description of the officer plain and easily intelligible. And abbreviations may be used, if in general understanding their import be known and fixed. The abbreviations here used are in very general use and it may be safely said that there are few persons capable of reading and writing who did not understand these letters, J. P., to signify justice of the peace."

That deed having been sufficiently acknowledged, there can be no doubt as to its effect, taken in connection with the will of the testator, T. T. Adams, Sr., and the proceedings in the chancery suit before referred to. Henry W. Adams died in 1896, leaving children living at the time of his death. The title to the real estate he took under the will became, therefore, at his death, a fee simple absolute, and descended to his heirs; and so with his share of the land devised to his brother, T. T. Adams, who died during Henry's life-time. His sister, Mrs. Saunders, died leaving no children surviving her, and Henry being dead, his children took his share of

Opinion.

the real estate devised to Mrs. Saunders. Mrs. Walden died in 1906, after the death of Mrs. Saunders, leaving children; so that her estate became indefeasible, and as she was a party to the deed of 1877, she and her heirs at law are bound by it, and as the property sued for was a part of the estate allotted to Mrs. Saunders, such of the plaintiffs as are the children of Mrs. Walden were not entitled to recover.

The case must, therefore, be reversed, and as it was submitted to the judge, this court will enter such judgment as the circuit court should have rendered.

*Reversed.*